**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TIMOTHY MCNALLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15 C 2802 |
| v. ) | |
| ) | |
| ILLINOIS BELL TELEPHONE ) | |
| COMPANY, d/b/a AT&T Illinois, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On September 8, 2015, Plaintiff Timothy McNally filed the present Second Amended Complaint alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS §115, *et. seq.* ("IWPCA"). McNally bases his claims on Defendant Illinois Bell Telephone Company's ("Illinois Bell") alleged failure to pay overtime compensation for all hours worked in excess of 40 hours in a week. Before the Court is Illinois Bell's partial motion to dismiss under Rule 12(b)(6). For the following reasons, the Court grants in part and denies in part Illinois Bell's motion.

**LEGAL STANDARDS**

**I.      Rule 12(b)(6) Motion to Dismiss**

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Also, "although a plaintiff need not anticipate or overcome affirmative defenses such as those based on the statute of limitations, if a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground." *O'Gorman v. City of Chicago,* 777 F.3d 885, 889 (7th Cir. 2015). Last, the Court "may take judicial notice of publicly available records of court proceedings." *Spaine v. Cmty. Contacts, Inc.,* 756 F.3d 542, 545 (7th Cir. 2014).

## II. Rule 15(c)(1)(B) Relation Back Doctrine

"Under Illinois law as under federal law, an amendment relates back when it arises out of the same transaction or occurrence set up in the original pleading." *Cleary v. Philip Morris Inc.,* 656 F.3d 511, 515 (7th Cir. 2011) (citation omitted). More specifically, an amendment relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the

original pleading." Fed.R.Civ.P. 15(c)(1)(B); *see also Luevano v. Wal-Mart Stores, Inc.,* 722 F.3d 1014, 1022 (7th Cir. 2013). "[T]he purpose of relation back" is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S. p. A.,* 560 U.S. 538, 549-50, 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010).

## BACKGROUND AND PROCEDURAL HISTORY

In his Second Amended Complaint, McNally alleges that he is a cable splicer and worked as an hourly non-exempt employee for Illinois Bell and that Illinois Bell did not pay him overtime compensation for all hours worked in excess of 40 a week in violation of the FLSA, IMWL, and IWPCA. (R. 16, Second Am. Compl. ¶¶ 1, 3.) McNally's allegations include (1) a claim based on his reviewing assignments and meeting with his manager and co-workers before his shift started, (2) a claim based on working through lunch break, and (3) a claim based on completing tasks after his shift had ended. (*Id*. ¶¶ 32-41.)

### I. Blakes Action

To give context to McNally's allegations, the Court turns to the procedural history of this lawsuit because McNally was an opt-in plaintiff in the FLSA collective action in *Blakes v. Ill. Bell Tel. Co.*, Case No. 11 C 0336 ("*Blakes* Action") pending before Magistrate Judge Kim. After the parties consented to Judge Kim's jurisdiction under 28 U.S.C. § 636(c), on June 15, 2011, Judge Kim conditionally certified a proposed class of similarly situated cable splicers. Specifically, Judge Kim determined that the named plaintiffs had made the "modest showing" for pre-conditional certification of the following overtime claims: (1) Illinois Bell's policy that

required cable splicers to maintain the security of their job sites routinely interfered with their lunch breaks; (2) cable splicers missed their lunch breaks because of traveling from job site to job site; and (3) Illinois Bell's policies forced cable splicers to work past the end of their shifts in order to complete their time sheets. (11 C 0336, R. 56, 6/15/11, Mem. Op, & Order, at 5-8.) After Judge Kim's conditional certification, the named plaintiffs issued notice of the *Blakes* Action to approximately 2,000 potential opt-in plaintiffs. McNally alleges that he filed a written consent and became part of the collective conditional class on August 1, 2011. (15 C 2802, Second Am. Compl. ¶¶ 11, 12.)

After discovery, Illinois Bell filed a motion to decertify the collective action. On December 17, 2013, Judge Kim granted the motion in part. (11 C 0336, R. 233, 12/17/13, Mem. Op. & Order.) More specifically, Judge Kim decertified the class except for the claims based on Illinois Bell's policies forcing cable splicers to work past the end of their shifts in order to complete their time sheets. (*Id*. at 54-57.) Once Judge Kim decertified the majority of the collective action, Illinois Bell moved for summary judgment. In ruling on that motion, Judge Kim addressed the named plaintiffs' attempt to amend their pleadings to include broader pre-shift and post-shift claims. Specifically, on December 10, 2014, Judge Kim concluded that the named plaintiffs had waived those broader claims by failing to discuss them in their response briefs and motion for leave to file a second amended complaint and that allowing constructive amendment at summary judgment would prejudice Illinois Bell given that the parties had not completed discovery on these issues. (R. 355, 12/10/14, Mem. Op. & Order, at 19-20.) The Court presumes familiarity with Judge Kim's December 2013 and December 2014 rulings.

**II.     McNally's Claims**

After the decertification decision took effect in the *Blakes* Action, counsel for the opt-in *Blakes* plaintiffs, including McNally's counsel, filed a lawsuit on February 28, 2014 (the "2014 Action"). The amended complaint in the 2014 Action alleged that the plaintiffs were "seeking to assert those claims that were not certified to go forward on a collective basis in" the *Blakes* Action. (14 C 1456, R. 8, Am. Compl. ¶ 3.) In that lawsuit, *Adkins v. Ill. Bell. Tel., Co.,* Case No. 14 C 1456, Chief Judge Castillo granted Illinois Bell's motion to dismiss for misjoinder and severed the individual opt-in plaintiffs' claims on March 24, 2015. (14 C 1456, R. 146, 147.) Chief Judge Castillo gave the opt-in plaintiffs until July 30, 2015 to file separate complaints containing their individual claims. (*Id.*) McNally filed the present action after Chief Judge Castillo's March 2015 ruling. The Court presumes familiarity with Chief Judge Castillo's March 2015 order.

## ANALYSIS

### I.  FLSA and IMWL Claims

In the present motion to dismiss, Illinois Bell argues that the FLSA's and IMWL's limitations periods bar McNally from bringing his pre-shift, lunch break, and post-shift claims that are broader than the claims initially certified in the *Blakes* Action. The FLSA has a two-year limitations period (three years where the violation is willful), *see* 29 U.S.C. § 255(a), and the IMWL has a three-year limitations period. *See* 820 ILCS 105/12. In the case of a collective action, 29 U.S.C. § 256(b) provides that an action for opt-ins commences when the individual files his written consent in the court in which the action is brought.

#### A.  Tolling of the Statute of Limitations

Illinois Bell argues that absent tolling, McNally's broader pre-February 28, 2011 claims

are barred by the limitations periods based on the assumption that the filing date of the lawsuit before Chief Judge Castillo, namely, February 28, 2014, is the relevant date for limitations purposes. In the Court's earlier rulings in the related cases *Ballard v. Illinois Bell Tel. Co.*, No. 15 C 2687, 2015 WL 6407574 (N.D. Ill. Oct. 21, 2015), and *Hodges v. Illinois Bell Tel. Co.*, 15 C 2711, 2015 WL 6407757 (N.D. Ill. Oct. 21, 2015), the Court concluded that these severed lawsuits were not separate lawsuits, but stem from the *Blakes* Action based on the premise that "[t]he statute of limitations for a plaintiff in a collective action is tolled after the plaintiff has filed a consent to opt in to the collective action, and begins to run again if the court later decertifies the collective action." *Butler v. DirectSAT USA, LLC,* 55 F. Supp. 3d 793, 801 (D. Md. 2014); *see also* Wright, McNally, & Kane, 7B Fed. Prac. & Proc. Civ. § 1807 (3d ed.) ("the statute of limitations for opt-in plaintiffs will begin to run again if the court later decertifies the collective action."). To clarify, it is reasonable to infer that if the limitations periods of collective and individual actions are intertwined as such, then the cases are related and not separate. The Court further reasoned that these lawsuits were not separate from the *Blakes* Action for Rule 15(c) purposes based on equitable considerations. *See Luevano,* 722 F.3d at 1022 (the relation back doctrine that "has its roots in the equitable notion that dispositive decisions should be based on the merits rather than technicalities.") (citation omitted). Thus, the Court applied Federal Rule of Civil Procedure 15(c)(1)(B)'s relation back doctrine instead of the tolling doctrine under *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and *Crown Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). *See, e.g., Arreola v. Godinez,* 546 F.3d 788, 796 (7th Cir. 2008).

The day after the Court ruled on *Ballard* and *Hodges*, another district judge decided

*Wiggins v. Illinois Bell,* No. 15 C 02769, 2015 WL 6408122, at *4 (N.D. Ill. Oct. 22, 2015), in which the court applied the *American Pipe* tolling doctrine without discussing Rule 15(c) relation back doctrine – most likely because the plaintiff did not argue that Rule 15(c)'s relation back doctrine applied under the circumstances.[1]  (15 C 2769, R. 15, Resp. Brief.)  Thereafter, in *Alphonse v. Illinois Bell*, No. 15 C 2692, 2015 WL 7251953 (N.D. Ill. Nov. 17, 2015), another district judge reconciled *Hodges*, *Ballard*, and *Wiggins*, stating "[w]hether viewed through the lens of Rule 15 relation-back doctrine or through the tolling principles governing Rule 23 actions, the inquiry is functionally the same: Was defendant sufficiently on notice of plaintiff's claim?"  *Alphonse,* 2015 WL 7251953 at *1.

Because *Wiggins* and *Alphonse* were decided after Illinois Bell's motion to dismiss in the present matter, Illinois Bell did not address these decisions until its reply brief, at which time Illinois Bell explained why the opt-in plaintiffs lawsuits that originated in the *Blakes* Action and severed by Judge Castillo are separate, new lawsuits that are not related to *Blakes*.  In doing so, Illinois Bell relied upon non-controlling legal authority that once a court decertifies a collective action, the opt-in plaintiffs are dismissed without prejudice in order to file a new lawsuit.  *See, e.g., Albitron v. Cagle's, Inc.*, 508 F.3d 1012, 1019  (5th Cir. 2007); *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 284 (N.D. Tex. 2008); *Ulvin v. Northwestern Nat'l Life Ins. Co.,* 141 F.R.D. 130, 131 (D. Minn. 1991).  These cases, however, do not hold that opt-in plaintiffs' lawsuits are separate actions from their underlying collective actions for purposes

---

[1] On December 1, 2015, another court adopted the Wiggins' reasoning in deciding *House v. Illinois Bell,* No. 15 C 2718, 2015 WL 7731866 (N.D. Ill. Dec. 1, 2015).  The *House* court did not discuss Rule 15(c)'s relation back doctrine probably because plaintiff stated in his response brief that he was proceeding under the assumption that the *American Pipe* tolling doctrine applied.  (15 C 2718, R. 24, Resp. Brief, at 7 n.2.)

of Rule 15(c) nor do these cases have the unique procedural posture of the present lawsuit. In any event, because Illinois Bell addressed *Wiggins* and *Alphonse* for the first time in its reply, the Court directed McNally to file a sur-reply addressing Illinois Bell's arguments. McNally filed his sur-reply on January 4, 2016.

In his sur-reply, McNally maintains that the legal continuity and relationship of his claims to the *Blakes* Action establish that his lawsuit is not a separate lawsuit from the collective action for Rule 15(c) purposes. McNally supports this argument by distinguishing legal authority Illinois Bell relied upon, including *Protich v. Will Ctny. Health Dept.,* No. 02 C 4796, 2002 WL 31875461, at *3 (N.D. Ill. Dec. 24, 2002). In *Protich*, the district court noted the importance of legal continuity when rejecting the plaintiff's arguments that Rule 15(c) applied, especially in light of the lack of legal relationship between the earlier state court lawsuit and the federal lawsuit at issue. McNally also points to a Sixth Circuit case in which the appellate court treated a collective action and the subsequent individual actions as the same lawsuit for purposes of attorney's fees. *See O'Brien v. Ed Donnelly Enter., Inc.,* 575 F.3d 567, 576 (6th Cir. 2009). McNally further asserts that there is an inherent unfairness in denying the opt-in Plaintiffs the ability to amend their allegations after approximately four and a half years of continuous litigation.

As the parties' legal memoranda reveal, there little, if any, case law on this exact subject matter. Due to equitable considerations, McNally's arguments are the more persuasive under the unique circumstances of this case. *See Woods v. Indiana Univ. – Purdue Univ.,* 996 F.2d 880, 884 (7th Cir. 1993) ("fairness militates against allowing a limitations defense to an opposing party who knows of the action within the required time frame"). Accordingly, the Court applies

the relation-back doctrine to McNally's claims.

### B. McNally's Second Amended Complaint Relates Back to Blakes Action

The allegations in the *Blakes* Action, as discussed by Judge Kim in his thorough December 2013 Memorandum Opinion and Order granting in part Illinois Bell's motion to decertify the conditional class, are as follows.

> The named plaintiffs filed their amended complaint in February 2011, claiming that Illinois Bell violates the FLSA by requiring cable splicers to include a half-hour lunch break on their time sheets whether or not they actually take a break, unless they receive a supervisor's preapproval to work through lunch. (R. 11, Am. Compl.¶¶ 17-18.) They further alleged that management routinely disciplines cable splicers for seeking overtime compensation for hours that were not pre-approved, and as a result, cable splicers regularly underreport the hours they work. (*Id.* ¶¶ 19–20.) In describing the policies that require them to work through lunch, the named plaintiffs alleged that they are required to maintain the security of job sites and travel between job sites even during their lunch hours. (*Id.* ¶ 26.) They also alleged that because of restrictions governing when they can return to their garage at the end of a shift, and because of an alleged shortage of garage computers, they often have to work beyond their scheduled shift to enter their time on Illinois Bell's computer system. (*Id.* ¶¶ 27-30.) As relief for these alleged overtime violations, the named plaintiffs sought a declaratory judgment stating that Illinois Bell's actions are unlawful, as well as damages on behalf of all similarly situated people who opt into the action. (*Id.* ¶ 50.)

*Blakes v. Illinois Bell Tel. Co.,* No. 11 CV 336, 2013 WL 6662831, at *1 (N.D. Ill. Dec. 17, 2013).

The Court would be hard-pressed to conclude that McNally's present FLSA claim does not arise out of the same conduct, transaction, or occurrence set out – or attempted to be set out – in the *Blakes* Action, or that Illinois Bell did not have notice of McNally's claims. *See* Fed.R.Civ.P. 15(c)(1)(B). McNally specifically alleges that he started and finished his workday at the Morris garage, where he was required to perform discrete tasks, including discussing his job assignments with his managers and co-workers. Also, McNally alleges that cable splicers

9

are expected to work through their unpaid lunch breaks to complete the tasks of securing their job sites, maintaining safety, and monitoring equipment. McNally further alleges that Illinois Bell has a policy requiring cable splicers not to return to their garages more than 20 minutes before the end of the shift, yet Illinois Bell expects cable splicers to complete these numerous tasks without pay.

Illinois Bell's attempt to parse out each of the allegations into pre-shift, lunch break, and post-shift overtime is unavailing because Rule 15(c) does not require that a claim be based on an identical theory of recovery, but instead it need only be based on the same conduct, transaction, or occurrence. *See Arreola,* 546 F.3d at 796; *Bularz v. Prudential Ins. Co.,* 93 F.3d 372, 379 (7th Cir. 1996). In particular, Illinois Bell's argument that Judge Kim's December 2014 Memorandum Opinion and Order narrowed the opt-in plaintiffs' claims regarding the broader pre-shift, lunch break, and post-shift claims is of no moment because Judge Kim had decertified the opt-in plaintiffs approximately a year before he ruled that the named plaintiffs in *Blakes* could not amend their allegations at summary judgment. In short, the opt-in plaintiffs did not waive these claims because they were no longer actively litigating their claims in the context of the underlying collective action. To conclude otherwise would go against the nature of the relation back doctrine that "has its roots in the equitable notion that dispositive decisions should be based on the merits rather than technicalities." *Luevano,* 722 F.3d at 1022 (citation omitted).

On a final note, Chief Judge Castillo discussed limitations periods in the context of severed claims in his March 2015 ruling when his explained that the remedy for misjoinder is severance and not dismissal because district courts are "duty bound" to prevent misjoinder from "lead[ing] to a dismissal with statute of limitation consequences[.]" *Adkins v. Illinois Bell Tel.*

10

*Co.,* No. 14 C 1456, 2015 WL 1508496, at *10 (N.D. Ill. Mar. 24, 2015) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)). Indeed, the Seventh Circuit teaches that "in formulating a remedy for a misjoinder the judge is required to avoid gratuitous harm to the parties, including the misjoined party." *Elmore*, 227 F.3d at 1012.

Because McNally's Second Amended Complaint relates back to the *Blakes* Action in which McNally filed a written consent on August 1, 2011, McNally's FLSA claims are timely. The Court therefore denies Illinois Bell's motion to dismiss.

**II.    IWPCA Claim**

Illinois Bell also moves to dismiss McNally's IWPCA claim arguing that federal law preempts this claim and that McNally has failed to state a claim under the circumstrances. The IWPCA permits recovery of all unpaid wages, plus monthly statutory penalties. *See* 820 ILCS 115/14. Also, the IWPCA states that wages "shall be defined as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the two parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2. Thus, "[t]o prevail on his IWPCA claim, [McNally] must first show that he had a valid contract or employment agreement." *Hess v. Kanoski & Assocs.,* 668 F.3d 446, 452 (7th Cir. 2012). "Illinois courts have explained that an agreement under the IWPCA is 'broader than a contract'" and "requires only a manifestation of mutual assent on the part of two or more persons." *Id.* (citation omitted). Here, McNally bases his IWPCA claim on three agreements, namely, Illinois Bell's internal policy regarding the reporting of time worked, Illinois Bell's code of business conduct, and the relevant Collective Bargaining Agreements ("CBAs"). The Court first turns to McNally's arguments in relation to the CBAs.

The CBAs at issue – between Illinois Bell and the International Brotherhood of Electrical Workers, Local Union 21 – set forth detailed provisions regarding overtime pay. (R. 23-1, Exs. A, B.) Based on these provisions, McNally asserts that he is seeking unpaid overtime wages at a rate of time and one-half of his regular rate for hours worked over forty in a given week. Illinois Bell argues that § 301 of the Labor Management Relations Act of 1947 ("LMRA") preempts McNally's claim based on the CBAs. In determining whether § 301 preempts a state law claim, courts look to the "legal character" of the claim to determine if the "question of state law, [is] entirely independent of any understanding embodied in the collective bargaining agreement." *Baker v. Kingsley,* 387 F.3d 649, 657 (7th Cir. 2004). If the resolution of the claim "is sufficiently dependent on an interpretation of the CBA," § 301 preempts the state law claim. *Id.* In short, "Section 301 preempts not only claims 'founded directly' on the collective bargaining agreement, but also state law claims that indirectly implicate a collective bargaining agreement." *Healy v. Metro. Pier & Exposition Auth.,* 804 F.3d 836, 841 (7th Cir. 2015).

The sections of the CBAs upon which McNally relies reveal a complex analysis for calculating overtime pay. Specifically, the CBAs have provisions relating to what absences are credited toward time worked for purposes of the overtime calculation, the difference in treatment between scheduled and unscheduled overtime, how wages and shift differentials are calculated, how hours worked are calculated for various specific activities, and how other premium pay provisions impact the overtime calculation. Under these circumstances, McNally's IWPCA claim is not "entirely independent of any understanding embodied in the collective bargaining agreement." *See Baker,* 387 F.3d at 657. Indeed, his IWPCA directly implicates the language and interpretation of the CBAs. *See, e.g., Gonzalez v. Farmington Foods, Inc.,* 296 F. Supp. 2d

12

912, 936 (N.D. Ill. 2003); *see also House v. Illinois Bell,* No. 15 C 2718, 2015 WL 7731866, at *3-5 (N.D. Ill. Dec. 1, 2015). Therefore, the Court grants Illinois Bell's motion to dismiss McNally's IWPCA claim based on the relevant CBAs.

Next, McNally bases his IWPCA claim on Illinois Bell's code of business conduct. Illinois Bell's code of business conduct, however, unequivocally states: "The Code of Business Conduct is not a contract of employment and does not create contractual rights of any kind between [Illinois Bell] and its employees." (15 C 2801, R. 23-1, Ex. C.) Because written disclaimers such as this belie any mutual assent, McNally's IWPCA claim based on the purported contract pursuant to Illinois Bell's code of business conduct is misplaced. *See Mooney v. Wyndham Worldwide Operations, Inc.,* No. 13 C 6592, 2014 WL 2959270, at *2 (N.D. Ill. July 1, 2014) ("The majority view in this district is that such a written disclaimer dissolves a claim under the IWPCA.") (collecting cases); *see also House,* 2015 WL 7731866, at *5. Therefore, the Court grants this aspect of Illinois Bell's motion to dismiss.

Last, McNally asserts that Illinois Bell's internal policy regarding the reporting of time worked creates an employment agreement as a basis for his IWPCA claim. The reporting of time-worked policy, however, does not create an agreement because it merely reiterates Illinois Bell's legal obligations under FLSA and state laws, such as the IMWL, to pay overtime for all hours actually worked in excess of 40 hours in a workweek. (15 C 2801, R. 23-1, Ex. D.) In short, this policy does not embody an employment agreement, but emphasizes Illinois Bell's commitment to follow federal, state, and local law regarding overtime pay. *See Barlett v. City of Chicago*, No. 14 C 7225, 2015 WL 135286, at *2 (N.D. Ill. Jan. 9, 2015) ("to survive dismissal, the plaintiff must point to an agreement supporting the IWPCA claim that is more than an

allegation that the employer is bound by existing overtime laws."). The Court thus grants Illinois Bell's motion to dismiss McNally's IWPCA claim in its entirety.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendant's partial motion to dismiss [22].

**Dated:** January 19, 2016

                                    **ENTERED**

                                    _____

                                    **AMY J. ST. EVE**
                                    **United States District Court Judge**